UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| PROJECT VERITAS ACTION FUND, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)     C.A. No. |
| DANIEL F. CONLEY, IN HIS OFFICIAL CAPACITY AS SUFFOLK COUNTY DISTRICT ATTORNEY, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Project Veritas Action Fund respectfully brings this action for declaratory and injunctive relief and complains as follows:

**INTRODUCTION**

1. Project Veritas Action Fund ("PVA") is a national media organization on the forefront of undercover investigative journalism.

2. Because Massachusetts maintains an unconstitutional recording law, PVA is prohibited from exercising its First Amendment right to engage in undercover newsgathering and journalism. *See* G.L. c. 272, §99.

3. Many of PVA's undercover investigative journalism reports have averaged over 100,000 views online and PVA's stories are often reported by other news outlets. Through its undercover investigative journalism, PVA is able to educate and inform the public about newsworthy topics of public concern and government accountability.

4. However, PVA's undercover newsgathering and reporting could result in criminal charges and civil lawsuits if undertaken in Massachusetts. PVA would focus its efforts on various issues within the Commonwealth, but is unconstitutionally restrained by an overbroad statute prohibiting the interception and disclosure of oral communications. *See* G.L. c. 272, §99.

5. Based on past experience, PVA has not uncovered newsworthy matters to report by publicly announcing its recording efforts and seeking the consent of all parties to be recorded. Rather, PVA has uncovered newsworthy matters to report through secretive recording of discussions, often in areas held open to the public such as voting places, sidewalks, and hotel lobbies. Without utilizing such techniques, PVA is unable to exercise its First Amendment rights to engage in undercover newsgathering and journalism in Massachusetts.

6. Across the United States, the First Amendment interests in free speech and a free press have provided ample protection to investigate and report issues of public concern. This protection includes preventing interception laws from going beyond the legitimate protection of individual privacy. Court decisions in the United States Court of Appeals for the First Circuit have curtailed such abuses on a case-by-case basis. *See, e.g.*, *Jean v. Mass. State Police*, 492 F.3d 24, 29–30 (1st Cir. 2007) (recognizing First Amendment right to publish recording of illegally intercepted communications over the prohibition in G.L. c. 272, §99); *Glik v. Cuniffe*, 655 F.3d 78, 82–84 (1st Cir. 2011) (recognizing "a constitutionally protected right to videotape police carrying out their official duties in public" under the First Amendment); *see also Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014). Although this precedent is welcome, it does not guarantee the protection of additional instances where surreptitious recording would be protected under the First Amendment. Massachusetts maintains a facially overbroad eavesdropping law that must be

declared unconstitutional to prevent a prior restraint on PVA's future efforts within Massachusetts. *See, e.g.*, *Commw. v. Manzelli*, 68 Mass. App. Ct. 691, 694 (2007).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the First and Fourteenth Amendments to the Constitution of the United States. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and the Civil Rights Act, 42 U.S.C. § 1983.

8.      This Court has jurisdiction to award attorneys' fees, in its discretion, in this action. 42 U.S.C. § 1988(b).

9.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1)–(2) because Defendant resides in the District of Massachusetts and all of the events or omissions giving rise to the claims occurred in this division.

## PARTIES

10.     Plaintiff PVA is a nonprofit corporation organized under section 501(c)(4) of the Internal Revenue Code. It is headquartered in Mamaroneck, New York.

11.     Defendant Daniel F. Conley is the Suffolk County District Attorney, whose office is located in Boston, Massachusetts. District Attorney Conley has the power to prosecute for illegal interception of oral communications under G.L. c. 272, §99 that occurs within the office's jurisdiction. *See* G.L. c. 12, §13.

## STATEMENT OF FACTS

12.     Massachusetts law requires consent of all persons who are party to a conversation for PVA to legally record, rather than illegally intercept, conversations. *See* G.L., c. 272, §99(B)(4) ("The term 'interception' means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use

3

of any intercepting device by any person *other than a person given prior authority by all parties to such communication . . .*" (emphasis added)).

13.     PVA's undercover newsgathering techniques involve intercepting oral communications of persons using intercepting devices as defined in statute. *See* G.L. c. 272, §§99(B)(2) (defining "oral communication"); (B)(3) (defining "intercepting device"); (B)(4) (defining "interception"); (B)(13) (defining "person").

14.     PVA does not engage and has no intention of engaging in the interception of wire communications as defined in the statute. *See* G.L. c. 272, §99(B)(1).

15.     PVA's undercover newsgathering techniques would subject it to felony prosecution under Massachusetts law for prohibited interception of oral communications. G.L. c. 272, §99(C)(1).

16.     PVA's newsgathering techniques would subject it to misdemeanor prosecution under Massachusetts law for prohibited possession of interception devices. G.L. c. 272, §99(C)(5).

17.     PVA's news reporting would subject it to misdemeanor prosecution under Massachusetts law for prohibited disclosure of oral communications. G.L. c. 272, §99(C)(3).

18.     A single PVA reporter's newsgathering and news reporting activities would subject most of PVA's staff to conspiracy or accessory charges that carry the same penalties for prohibited interception, prohibited possession of interception devices and prohibited disclosure of oral communications. G.L. c. 272, §99(C)(6).

19.     PVA's newsgathering and news reporting activities would subject it to civil lawsuits under Massachusetts law from aggrieved persons, subjecting it to claims for actual damages, punitive damages, and attorney's fees. G.L. c. 272, §99(B)(6); (Q).

20. PVA and its respective journalists do not qualify for any exemptions under the statute. *See* G.L. c. 272, §99(B)(4), (D).

21. PVA would like to engage in undercover investigative journalism projects in Massachusetts. In particular, PVA would like to investigate the recently reported instances of landlords taking advantage of housing shortages in Boston where students may live in unsafe and dilapidated conditions. Likewise, PVA would like to investigate the trustworthiness and accountability of government officials, including police officers, in a variety of public and non-public settings.

22. In 2014, through undercover newsgathering, PVA uncovered a stark contrast between the public statements of a candidate for United States Senate in Kentucky and the statements of her campaign staff. *See Grimes' campaign workers caught on hidden camera: "It's a lying game"*, YOUTUBE, Oct. 6, 2014, https://www.youtube.com/watch?v=A1N3rbwRA_k. This exposé provided the citizens of Kentucky with relevant information about a candidate seeking election to federal office.

23. In September 2015, PVA exposed campaign finance violations in New York using undercover techniques. *See HIDDEN CAM: Hillary's National Marketing Director Illegal Accepting Foreign Contribution*, YOUTUBE, Sept. 1, 2015, https://www.youtube.com/watch?v=-qxF7Z2N7Y4.

24. Just one week later, PVA brought national attention to electoral malfeasance in Nevada using similar techniques. *See Hidden Cameras Capture Clinton Campaign Staff in Nevada not Only Skirting the Law but Mocking it*, PROJECT VERITAS ACTION FUND, http://www.projectveritasaction.com/video/hidden-cameras-capture-clinton-campaign-staff-nevada-not-only-skirting-law-mocking-it.

25. Most recently, a PVA report detailed the weaknesses of voter registration laws in New Hampshire by focusing on the surreptitiously recorded statements of government officials. Chuck Ross, *EXCLUSIVE: New O'Keefe Video Shows How Easy It Is to Commit Voter Fraud in New Hampshire*, DAILY CALLER, Feb. 2, 2016, http://dailycaller.com/2016/02/10/exclusive-new-okeefe-video-shows-how-easy-it-is-to-commit-voter-fraud-in-new-hampshire-video/.

26. Undercover investigative journalism employing surreptitious recording is the sole method through which PVA is able to uncover newsworthy matters concerning government fraud, abuses in the political process and other areas of public concern. In a substantial amount of instances, the public's interest in being informed about such matters outweighs the government's interest in prohibiting all surreptitious newsgathering. Indeed, on a national basis, undercover journalism is responsible for uncovering police corruption, environmental pollution, poor airport security, and white collar crime.

27. PVA would like to undertake undercover investigation of public issues in Boston and throughout Massachusetts, including: (1) public officials acting in public spaces (case law only protects recording police officers); (2) public officials in places with no expectation of privacy; and (3) private individuals in places with no expectation of privacy.

## COUNT I

**The Prohibition in G.L. c. 272, §99 Against Intercepting Oral Communications in a Public Place is Unconstitutionally Overbroad on its Face and as Applied to PVA.**

28. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press[.]" U.S. CONST. amend. I. "[T]he First Amendment is applicable to the States through the Fourteenth [Amendment.]" *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778 (1978). "The filming of government officials engaged in their duties

6

in a public place, including police officers performing their responsibilities, fits comfortably within [the] principles [of the First Amendment]." *Glik*, 655 F.3d at 82.

29. "In the First Amendment context," the Supreme Court "recognizes 'a . . . type of facial challenge,' whereby a law may be invalidated as overbroad if 'a *substantial number* of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *U.S. v. Stevens*, 559 U.S. 460, 473 (2010), *citing Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (emphasis added).

30. G.L. c. 272, §99 prohibits PVA from recording and disclosing any conversation in Massachusetts without the consent of all parties, including government officials engaged in their duties in a public place. The Commonwealth's courts have affirmed this interpretation on numerous occasions. *Manzelli*, 68 Mass. App. Ct. at 694 (allowing conviction for public recording of police officers); *Commw. v. Hyde*, 434 Mass. 594, 605 (2001) ("Secret tape recording by private individuals has been *unequivocally banned* . . . unless and until the Legislature changes the statute[.]" (emphasis added)).

31. While prior First Circuit precedent has afforded limited protection on a case-by-case basis, particularly for the recording of police officers in public spaces, these cases do not protect PVA's First Amendment rights to engage in future exposés that would surreptitiously record other government officials in public areas.

32. The law "create[s] a criminal prohibition of alarming breadth." *Stevens*, 559 U.S. at 474. It is unconstitutionally overbroad, facially and as applied to PVA.

## COUNT II

### G.L. c. 272, §99's Prohibition Against Intercepting Oral Communications of Individuals Having No Reasonable Expectation of Privacy is Unconstitutionally Overbroad on Its Face and as Applied to PVA

33. Even relying on the First Circuit's previous recognition of First Amendment protection for recording police officers engaged in their official duties in public places, PVA remains unconstitutionally burdened by G.L. c. 272, §99.

34. PVA is prohibited from secretly recording oral communications made in any conversation—even when the communications occur in circumstances with no reasonable expectation of privacy—without prior authority of all parties. G.L. c. 272, §§99(B)(2), (B)(4), (C)(1).

35. PVA is prohibited from secretly recording speeches made in public places by non-government officials without prior authority by the speaker. G.L. c. 272, §§99(B)(2), (B)(3), (B)(4), (C)(1).

36. PVA is prohibited from simply possessing intercepting devices and "evincing an intent to commit an interception not permitted or authorized by this section[.]" As discussed, despite First Circuit precedent, PVA remains "unequivocally banned" from engaging in all of its undercover newsgathering activities under the statute. *Hyde*, 434 Mass. at 605.

37. The unequivocal ban in G.L. c. 272, §99 cannot be overcome by prosecutorial discretion. *Stevens*, 559 U.S. at 480 ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.")

38. PVA retains the First Amendment right to publish information of public concern about political processes through its undercover journalism about governmental and non-

governmental individuals involved in investigations. PVA should likewise be afforded prepublication protection as it gathers such information.

39.  G.L. c. 272, §99 is substantially overbroad, prohibiting interception far beyond conversations undertaken with a reasonable expectation of privacy, and is invalid under the First Amendment, facially and as applied to PVA.

## PRAYER FOR RELIEF

Wherefore, PVA prays for the following relief:

1.  A declaratory judgment that G.L. c. 272, §99(B)(4), (C)(1), (C)(3), (C)(5) and (C)(6) are unconstitutional on their face and as applied to PVA.

2.  Preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 1983 against enforcement of G.L. c. 272, §99(B)(4), (C)(1), (C)(3), (C)(5) and (C)(6) against activity that constitutes the interception of oral communications of government officials engaged in their duties in a public place.

3.  Preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 1983 against enforcement of G.L. c. 272, §99(B)(4), (C)(1), (C)(3), (C)(5) and (C)(6) against activity that constitutes the interception of oral communications of persons when such communications occur in circumstances with no reasonable expectation of privacy.

4.  Plaintiffs' reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 or any applicable statute or authority, and further relief this Court may grant in its discretion.

5.  Any other relief that the Court deems just and appropriate.

Respectfully submitted,

PROJECT VERITAS ACTION FUND,

By its attorneys,

/s/ Gregory D. Cote
Daniel J. Kelly, BBO# 553926
dkelly@mccarter.com
Gregory D. Cote, BBO# 645943
gcote@mccarter.com
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
617-449-6500 – o
617-326-3098 – f

Of Counsel:

Benjamin Barr*
12519 Carrington Hill Drive
Gaithersburg, MD 20878
202.595.4671 [Tel.]
benjamin.barr@gmail.com

Stephen R. Klein*
500 Madison Street #419
Alexandria, VA 22314
734.233.1705 [Tel.]
stephen.klein.esq@gmail.com

*admission pro hac vice pending

March 4, 2016.