## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

_____
                                )
PROJECT VERITAS ACTION FUND,     )
                                )
                Plaintiff,       )
                                )
v.                               )          Civil Action
                                )          No. 16-10462-PBS
DANIEL F. CONLEY, in his Official )
Capacity as Suffolk County       )
District Attorney,               )
                                )
                Defendant.       )
_____ )

## MEMORANDUM AND ORDER

March 23, 2017

Saris, C.J.

Plaintiff Project Veritas Action Fund ("Project Veritas"), a news gathering organization, brings facial and as-applied challenges to the Massachusetts Wiretap Statute, Mass. Gen. Laws ch. 272, § 99 ("Section 99"), on the ground that it violates the First and Fourteenth Amendments by prohibiting secret recording of the oral conversations of public and private individuals.[1] The verified complaint, brought under 28 U.S.C. §§ 2201-02 and 42

---

[1]   Other plaintiffs raised similar claims before this Court in Martin v. Evans, No. CV 16-11362-PBS, 2017 WL 1015000, at *1 (D. Mass. Mar. 13, 2017). The Court assumes familiarity with that opinion.

U.S.C. § 1983, seeks declaratory and injunctive relief. The Defendant, Suffolk County District Attorney, Daniel Conley, moves to dismiss on the grounds that plaintiff lacks standing and the complaint fails to state a claim.

After hearing, the Court **DENIES** the Motion to Dismiss (Docket No. 26) in part and **ALLOWS** it in part. The Court holds that Project Veritas survives the standing challenge with respect to its claim that the state prohibition of the secret recording of private individuals violates the First Amendment. However, the Court holds that Section 99's ban on the secret recording of conversations by private individuals does not violate the First Amendment because the statute is narrowly tailored to promote the significant governmental interest of protecting the conversational privacy of Massachusetts residents. The Motion for Preliminary Injunction (Docket No. 21) is **DENIED**.

## FACTUAL BACKGROUND

For the purposes of the motion to dismiss, the facts are taken as true, as alleged in the verified complaint.

Project Veritas is a national media organization primarily engaged in undercover journalism. Its undercover newsgathering techniques involve recording and intercepting oral communications of persons without their knowledge or consent.

2

This secret recording often occurs in public places such as polling places, sidewalks, and hotel lobbies.

These undercover techniques are used in news gathering in a variety of scenarios. In 2014, Project Veritas utilized "undercover newsgathering" to discover "a stark contrast between the public statements of a candidate for United States Senate in Kentucky and the statements of her campaign staff." Docket No. 1 ¶ 22. In September 2015, Project Veritas "exposed campaign finance violations in New York using undercover techniques." Id. ¶ 23. It exposed "electoral malfeasance" in Nevada using similar recording techniques. Id. ¶ 24. Most recently, it "detailed the weakness of voter registration laws in New Hampshire by focusing on the surreptitiously recorded statements of government officials." Id. ¶ 25.

Project Veritas has not previously engaged in any surreptitious recording in Massachusetts, though it wants to, because of a fear that utilizing undercover techniques in Massachusetts would expose it to criminal and civil liability under Section 99.[2] Project Veritas hopes to undertake undercover investigation of public issues in Boston and throughout

---

[2]    Project Veritas also alleges that another provision of the statute, § 99(Q), "would subject it to civil lawsuits under Massachusetts law from aggrieved persons, subjecting it to claims for actual damages, punitive damages, and attorney's fees." Docket No. 1 ¶ 19.  However, PVA does not seek any relief regarding this section. See id. at 9.

Massachusetts. Id. ¶ 27. Specifically, Project Veritas alleges that it "would like to investigate the recently reported instances of landlords taking advantage of housing shortages in Boston where students may live in unsafe and dilapidated conditions. Likewise, [Project Veritas] would like to investigate the trustworthiness and accountability of government officials, including police officers, in a variety of public and non-public settings." Id. ¶ 21.

**LEGAL FRAMEWORK**

## I.   Motion to Dismiss Standard

Courts evaluate motions to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1). See United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007). In assessing Project Veritas' standing, the court must take the complaint's well-pleaded facts as true and indulge all reasonable inferences in its favor. Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). "[A]t the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action. Neither conclusory assertions nor unfounded speculation can supply the necessary heft." Id. at 731.

The same basic principles apply to evaluating a Rule 12(b)(6) motion used to dismiss complaints that do not "state a claim upon which relief can be granted." See Fed. R. Civ. P.

12(b)(6). In evaluating a Rule 12(b)(6) motion, the Court must accept the factual allegations in the plaintiff's complaint as true, construe reasonable inferences in its favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in a complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). To reach the threshold of plausibility, the allegations must be "more than merely possible." Schatz v. Repub. State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Dismissal for failure to state a claim pursuant to Rule 12(b)(6) is appropriate when the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25

(1st Cir. 1997) (quoting <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988)).

## II.   **Massachusetts Wiretap Statute**

The Massachusetts Wiretap Statute makes it a crime to "willfully commit[] an interception, attempt[] to commit an interception, or procure[] any other person to commit an interception or to attempt to commit an interception of any wire or oral communication." Mass. Gen. Laws ch. 272, § 99(C)(1). Interception is defined as "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication." <u>Id.</u> § 99(B)(4). An oral communication is defined as "speech, except such speech as is transmitted over the public air waves by radio or other similar device." <u>Id.</u> § 99(B)(2).

**DISCUSSION**

## I.   **Standing for Pre-Enforcement Review**

Defendant Conley moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that Project Veritas lacks standing to bring this suit since it fails to allege facts that show, with any plausible degree of specificity, that it intends to secretly record the oral communications of individuals in

6

Suffolk County without their consent in violation of Massachusetts law.

Project Veritas alleges that if not for Section 99, it would secretly record "landlords taking advantage of housing shortages in Boston where students may live in unsafe and dilapidated conditions" and would also record communications in order to investigate "the trustworthiness and accountability of government officials, including police officers, in a variety of public and non-public settings." Docket No. 1 ¶ 21. James O'Keefe, President of Project Veritas, "verif[ied] under penalty of perjury under the laws of the United States of America that the factual statements contained in [Project Veritas'] Verified Complaint concerning [Project Veritas'] existing and proposed activities are true and correct." Docket No. 1 ex. 1. Project Veritas argues that it cannot provide any more specific details about whom it intends to record, where, when and how frequently because it cannot know all the developments an investigation may involve. To disclose this type of information would severely hinder the success of the investigation.

The First Circuit has stated that "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling

contrary evidence." <u>N.H. Right to Life Political Action Comm. v.</u>
<u>Gardner</u>, 99 F.3d 8, 15 (1st Cir. 1996). <u>See generally</u> <u>Susan B.</u>
<u>Anthony List v. Driehaus</u>, 134 S. Ct. 2334 (2014).

In <u>Martin v. Evans</u>, the Court set forth the caselaw
governing pre-enforcement challenges to statutes based on the
First Amendment. 2017 WL 1015000, at *2-4. There the Court
concluded that the plaintiffs, two civil rights activists, would
face a credible threat of prosecution should they engage in
their intended actions of secretly tape recording police
officers. <u>Id.</u> at *4. In <u>Martin</u>, the complaint alleged recent
instances of Section 99 prosecutions in the state "against
secret recording of police officers performing their duties in
public." <u>Id.</u> at *2. The complaint also alleged that the Boston
Police Department has "official training materials [that]
instruct officers that they have a 'right of arrest' whenever a
person secretly records oral communications." <u>Id.</u>

Section 99 is not a moribund law. Although there are no
statistics in this record about how often persons are arrested
or charged for a Section 99 violation, the Supreme Judicial
Court reaffirmed the vitality of the statute in <u>Commonwealth v.</u>
<u>Hyde</u>. 750 N.E.2d 963, 964 (Mass. 2001) (finding that an
individual may be prosecuted under Section 99 for secretly tape
recording statements made by police officers during a routine
traffic stop). Moreover, when asked at the hearing in <u>Martin</u>,

8

Conley's counsel did not disavow enforcement of Section 99. See Blum v. Holder, 744 F.3d 790, 799 (1st Cir. 2014) (finding no standing where "the Government . . . disavowed any intention to prosecute plaintiffs for their stated intended conduct").

Project Veritas stated in its verified complaint that it intends to investigate private landlords. Project Veritas is an aggressive news gathering organization that has engaged in significant undercover surveillance of private individuals in states that permit it. There is no reason to believe it would not be doing so in Massachusetts if it were not deterred by the law. As such, the Court finds a credible threat of enforcement against Project Veritas that has chilled its speech with respect to its specific intent to investigate "scofflaw" landlords.

With respect to Project Veritas' claim that it intends to investigate government officials, however, the allegations are too vague to pass muster. Project Veritas does not specify any particular investigation it seeks to undertake. While Project Veritas states it would be tipping its hand by being too specific about individuals it is investigating, the law requires a plausible showing of true intent to investigate that has been chilled. In evaluating a pre-enforcement challenge, a court must distinguish between situations where the plaintiff's "interest was manifest and the parameters of the activity that it proposed to undertake were discrete and well-defined," from cases

involving "plaintiffs who were unlikely to engage in the proscribed activity or plaintiffs who had formulated no firm plans for doing so." R.I. Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 32 n. 2 (1st Cir. 1999).

The Court concludes that Project Veritas has sufficiently alleged standing with respect to the First Amendment challenge to the ban on the secret audio recording of private individuals. However, the motion to dismiss is allowed with respect to government officials without prejudice to repleading more specific allegations.

## II.  First Amendment As-Applied Challenge

Conley argues that Project Veritas fails to state a claim under the First Amendment because the First Amendment does not provide a right to secretly record oral communications. The First Circuit has recognized that the First Amendment protects "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space . . . ." Glik v. Cunniffe, 655 F.3d 78, 85 (1st Cir. 2011). Although information gathering about matters of public interest through audio and audio-visual recording in public spaces is protected by the First Amendment, it is subject to reasonable restrictions. Id. at 83-84. The Fifth Circuit recently cited Glik in Turner v. Lieutenant Driver, concluding that a "First Amendment right to record the police does exist,

10

subject only to reasonable time, place, and manner restrictions." 848 F.3d 678, 688 (5th Cir. 2017); see also Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding a "First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct").

As the Court explained in Martin, the Court must apply intermediate scrutiny because Section 99 is a content-neutral law. 2017 WL 1015000, at *7. The Court found "[t]he government does not have a significant interest in protecting the privacy of law enforcement officials discharging their duties in a public space" and that the law was not narrowly tailored to serve other important government interests. Id. at *8. As such, the Court held, "Section 99, as applied to the secret recording of government officials in the performance of their duties in public, violates the First Amendment." Id. Martin did not involve a claim challenging Section 99's prohibition on secretly recording the conversations of private individuals.

The cutting-edge issue in this case is whether Section 99 violates the First Amendment by categorically prohibiting the intentional secret recording of private individuals.

The Supreme Court has held, "[p]rivacy of communication is an important interest." Bartnicki v. Vopper, 532 U.S. 514, 532 (2001) (involving the illegal tape-recording and broadcast of a

private conversation about a matter of public concern published by the media in a union dispute). "Moreover, the fear of public disclosure of private conversations might well have a chilling effect on private speech." Id. at 532-33. The government has a significant interest in protecting the "conversational privacy" of its citizens. Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 608 (7th Cir. 2012) (holding that the Illinois eavesdropping statute violated the First Amendment in an action involving the open recording of police officers).

The express legislative purpose of Section 99's unequivocal ban of secret audio recording is to protect Massachusetts citizens' privacy. The statute's preamble states that secret recording "pose[s] grave dangers to the privacy of all citizens of the commonwealth." Mass. Gen. Laws ch. 272 § 99(A). The Supreme Judicial Court ("SJC") stated: "The statute's preamble expresses the Legislature's general concern that 'the uncontrolled development and unrestricted use of modern electronic surveillance devices pose[d] grave dangers to the privacy of all citizens of the commonwealth' and this concern was relied on to justify the ban on the public's clandestine use of such devices." Commonwealth v. Hyde, 750 N.E.2d 963, 967 (Mass. 2001) (quoting Mass. Gen. Laws ch. 272 § 99(A)); see Commonwealth. v. Gordon, 666 N.E.2d 122, 134 (Mass. 1996) ("It

is apparent from the preamble that the legislative focus was on the protection of privacy rights . . . .").

The SJC has found that the statute is meant to protect individuals independent of their reasonable expectation of privacy: "[W]e would render meaningless the Legislature's careful choice of words if we were to interpret 'secretly' as encompassing only those situations where an individual has a reasonable expectation of privacy. If the Legislature had intended to [prohibit only secret recording where an individual has a reasonable expectation of privacy], the statute would have been written in terms similar to those used in the California eavesdropping statute . . . . Rather, it is apparent from the Report of the Special Commission on Electronic Eavesdropping, 1968 Senate Doc. No. 1132, that the legislative intent was to impose more stringent restrictions on the use of electronic devices by private individuals than is done in other States." Commonwealth v. Jackson, 349 N.E.2d 337, 340 (Mass. 1976).

Project Veritas argues that it has the First Amendment right to record private conversations of individuals speaking in public places where there is no reasonable expectation of privacy. But, "private talk in public places is common." Alvarez, 679 F.3d at 606. Individuals have conversations they intend to be private, in public spaces, where they may be overheard, all the time -- they meet at restaurants and coffee

shops, talk with co-workers on the walk to lunch, gossip with friends on the subway, and talk too loudly at holiday parties or in restaurant booths. These types of conversations are ones where one might expect to be overheard, but not recorded and broadcast. There is a significant privacy difference between overhearing a conversation in an area with no reasonable expectation of privacy and recording and replaying that conversation for all to hear. See Alvarez, 679 F.3d at 605-06 (recognizing that the First Amendment permits greater protection for conversational privacy than for the public conversations of public officials); see also State v. O'Brien, 774 A.2d 89, 96 (R.I. 2001) ("Although we may expect individuals with whom we are communicating to hear and even to remember what we are saying (and perhaps how we have said it), we usually do not expect them to acquire surreptitiously an exact audio reproduction of the conversation that they can later replay at will for themselves or for others.").

Project Veritas protests that it intends to record individuals such as "scofflaw" landlords and such newsgathering serves an important public policy interest protected by the First Amendment. Of course, reporters can take notes, but Project Veritas makes a fair argument that audio-recording of an individual will carry a more powerful punch than a reporter's recounting of an encounter. Alvarez, 679 F.3d at 606 ("We

14

acknowledge the difference in accuracy and immediacy that an audio recording provides as compared to notes or even silent videos or transcripts.").

Project Veritas claims that Section 99 fails the intermediate scrutiny standard because the statute is not narrowly tailored to protect conversational privacy only in those circumstances where there is a reasonable expectation of privacy. "Most state electronic privacy statutes apply only to private conversations; that is, they contain (or are construed to include) an expectation-of-privacy requirement that limits their scope to conversations that carry a reasonable expectation of privacy." Alvarez, 679 F.3d at 607 (citing Jesse Harlan Alderman, Police Privacy in the iPhone Era?, 9 First Amend. L. Rev. 487, 533-45 (2011) (collecting state statutes)); see, e.g., Cal. Penal Code § 632(c) (defining "confidential communication" to exclude circumstances "in which the parties to the communication may reasonably expect that the communication may be overheard or recorded"). Project Veritas points out that without the reasonable expectation of privacy benchmark, it could be charged with a felony for intercepting oral communications made by a private person giving a speech on the Boston Public Common where the speaker had no possible legitimate expectation of privacy. The SJC has eschewed an approach that limits the reach of the statute to situations

15

where the speaker did not have a reasonable expectation that his speech is confidential. Commonwealth v. Rivera, 833 N.E.2d 1113 (Mass. 2005). However, the First Circuit pointed out: "Although the case was resolved on other grounds, four of the seven justices of the Supreme Judicial Court concurred to note that the defendant's unawareness of the audio recording capabilities of the security cameras did not render the recordings 'secret' under the wiretap statute where the cameras were in plain sight." Glik, 655 F.3d at 87 (citing Commonwealth v. Rivera, 833 N.E.2d 1113, 1125 (Mass. 2005) (Cowin, J., concurring in part) ("That the defendant did not know the camera also included an audio component does not convert this otherwise open recording into the type of 'secret' interception prohibited by the Massachusetts wiretap statute."); id. at 1130 (Cordy, J., concurring) ("Just because a robber with a gun may not realize that the surveillance camera pointed directly at him is recording both his image and his voice does not, in my view, make the recording a 'secret' one within the meaning and intent of the statute.")). Thus, the statute permits open recording in plain sight by cameras or cell phones with an audio component.

Project Veritas argues that incorporating a reasonable expectation of privacy limitation would adequately protect a right to privacy that was enforceable in courts under state tort or statutory law. See Mass. Gen. Laws ch. 214, § 1B (creating

statutory right to privacy). The Massachusetts Legislature, though, is not limited to using these after-the-fact tort remedies which apply only after private conversations are broadcast in public. While the reasonable expectation of privacy standard for defining oral communications might be the least restrictive alternative, that approach is not required under intermediate scrutiny when the privacy of individual conversations is at stake.

In sum, under the intermediate scrutiny standard, Section 99 is narrowly tailored to serve the purpose of protecting privacy by permitting only non-secret recordings of private conversations. Project Veritas has failed to state a claim that Section 99, as applied to the secret recording of private individuals, violates the First Amendment.

## III. **Facial Challenge**

To succeed on a facial challenge a plaintiff generally "must establish that no set of circumstances exists under which [a legislative act] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). In the First Amendment context, however, the overbreadth doctrine applies to facial challenges. Virginia v. Hicks, 539 U.S. 113, 118 (2003) (citing Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984)). "It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial

review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable. This exception from general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." Forsyth Cty., Ga. v. Nationalist Movement, 505 U.S. 123, 129 (1992) (internal citations omitted).

The overbreadth doctrine requires a substantial number of a statute's applications to be unconstitutional, "judged in relation to the statute's plainly legitimate sweep." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 n.6 (2008). The Supreme Court has recognized the overbreadth doctrine as "strong medicine" and has limited its application to instances where a law "prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292-93 (2008). To the extent that a statute infringes on First Amendment rights, chills the exercise of a protected activity, and is "sweeping" and without limitation, it is more likely to be found constitutionally invalid. See, e.g., New York v. Ferber, 458 U.S. 747, 771-72 (1982). However, if the reach of the statute is limited, the statute is less likely to be found constitutionally overbroad. Id. "It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment

18

rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." Broadrick v. Oklahoma, 413 U.S. 601, 611-12 (1973).

Most applications of Section 99 are constitutional. Section 99 constitutionally protects private conversations in all settings and conversations with government officials in nonpublic settings or about non-official matters.

Although Martin found Section 99 unconstitutional as applied to the recording of government officials in the discharge of their duties in public, a wide range of legitimate applications remain. When the likelihood of unjustifiable applications of the statute is a small fraction of the constitutional applications, the statute is unlikely to be substantially overbroad. See, e.g., Ferber, 458 U.S. at 773 (finding statutory ban on child pornography did not constitute substantial overbreadth because medical, educational, or artistic works containing nude children doubtfully "amount[ed] to more than a tiny fraction of the materials within the statute's reach"). Since the reach of the statute is limited and the majority of its applications are legitimate, Section 99 is not substantially overbroad and it is not, therefore, unconstitutional on its face.

## **ORDER**

Project Veritas' Motion for a Preliminary Injunction
(Docket no. 21) is **DENIED.** Conley's Motion to Dismiss (Docket
No. 26) is **ALLOWED** with respect to the secret recording of
private individuals. Pursuant to Fed. R. Civ. P. 12(b)(1), the
Motion to Dismiss (Docket No. 26) is **ALLOWED** as to government
officials but without prejudice to amending the complaint within
30 days.


                                        /s/ PATTI B. SARIS_____
                                        Patti B. Saris
                                        Chief United States District Judge