**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

```
_____
                                     )
PROJECT VERITAS ACTION FUND,         )
                                     )
                Plaintiff,           )
                                     )
v.                                   )    Civil Action
                                     )    No. 16-10462-PBS
DANIEL F. CONLEY, in his Official    )
Capacity as Suffolk County           )
District Attorney,                   )
                                     )
                Defendant.           )
_____)
```

**MEMORANDUM AND ORDER**

September 6, 2017

Saris, C.J.

Plaintiff Project Veritas Action Fund ("Project Veritas"), a news gathering organization, brings a motion for a preliminary injunction to enjoin Defendant Daniel F. Conley from enforcing the Massachusetts Wiretap Statute, Mass. Gen. Laws ch. 272, § 99 ("Section 99") on the ground that it violates the First and Fourteenth Amendments by prohibiting secret recording of the oral conversations of public officials engaged in their duties in public spaces. Defendant, the Suffolk County District Attorney, moves to dismiss on ripeness grounds.

The Court assumes familiarity with its previous ruling on Project Veritas' First Motion for Preliminary Injunction. Project Veritas Action Fund v. Conley, No. 16-CV-10462-PBS, 2017 WL 1100423 (D. Mass. Mar. 23, 2017). The Court also assumes familiarity with the companion case, Martin v. Evans, No. 16-CV-11362-PBS, 2017 WL 1015000 (D. Mass. Mar. 13, 2017).

After hearing, the Court **ALLOWS** the Motion to Dismiss without prejudice. Docket No. 72.

### FACTUAL BACKGROUND

For the purpose of the motion to dismiss, the facts are taken as true, as alleged in the first amended verified complaint.

Project Veritas is a national media organization primarily engaged in undercover journalism. Its undercover newsgathering techniques involve recording and intercepting oral communications of persons without their knowledge or consent. This secret recording often occurs in public places such as polling places, sidewalks, and hotel lobbies. In 2014, Project Veritas used "undercover newsgathering" to discover "a stark contrast between the public statements of a candidate for United States Senate in Kentucky and the statements of her campaign staff." Docket No. 48 ¶ 23. In September 2015, Project Veritas "exposed campaign finance violations in New York using undercover techniques." Id. ¶ 24. It exposed "electoral

2

malfeasance" in Nevada using similar recording techniques. Id. ¶ 25. Most recently, it "detailed the weakness of voter registration laws in New Hampshire by focusing on the surreptitiously recorded statements of government officials." Id. ¶ 26.

Project Veritas has not previously engaged in any surreptitious recording in Massachusetts, though it wants to, because of a fear that utilizing undercover techniques in Massachusetts would expose it to criminal and civil liability under Section 99. Project Veritas hopes to undertake undercover investigation of public issues in Boston and throughout Massachusetts. Id. ¶ 30. Specifically, Project Veritas alleges that it would like to investigate and report on the public controversy over "sanctuary cities" in Massachusetts and more generally the motives and concerns of Boston public officials regarding immigration policy and deportation. Docket No. 48 ¶ 22, 30.

## MOTION TO DISMISS STANDARD

Courts evaluate motions to dismiss for ripeness under Federal Rule of Civil Procedure 12(b)(1). See Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations, 643 F.3d 16, 17 (1st Cir. 2011). In assessing the ripeness of Project Veritas' claim, the Court must take the complaint's well-pleaded facts as true and indulge all reasonable inferences

3

in its favor. Id. "In resolving a Rule 12(b)(1) motion, we may also consider other materials in the district court record, including where those materials contradict the allegations in the complaint." Id. Defendant did not seek discovery on the ripeness issue.

## RIPENESS

"Article III restricts federal court jurisdiction to 'Cases' and 'Controversies.'" Reddy v. Foster, 845 F.3d 493, 499 (1st Cir. 2017) (citing U.S. Const. art. III, § 2). "Two of the limitation's manifestations are the justiciability doctrines of standing and ripeness, which are interrelated; each is rooted in Article III." Id. (citing Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 n.5 (2014) ("[T]he Article III standing and ripeness issues in this case 'boil down to the same question.'")). "Much as standing doctrine seeks to keep federal courts out of disputes involving conjectural or hypothetical injuries, the Supreme Court has reinforced that ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Id. (citing Texas v. United States, 523 U.S. 296, 300 (1998)). "'The facts alleged, under all the circumstances, must show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of' the

judicial relief sought." Id. (quoting Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 326 (1st Cir. 2016)). "The plaintiff[] bear[s] the burden of alleging facts sufficient to demonstrate ripeness. Even a facial challenge to a statute is constitutionally unripe until a plaintiff can show that federal court adjudication would redress some sort of imminent injury that he or she faces." Id. at 501 (internal citations omitted).

The determination of ripeness depends on two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 8 (1st Cir. 2012) (quoting Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)). "The fitness prong 'has both jurisdictional and prudential components.' The jurisdictional component of the fitness prong concerns 'whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts.'" Reddy, 845 F.3d at 501 (quoting Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)). "The prudential component of the fitness prong concerns 'whether resolution of the dispute should be postponed in the name of judicial

restraint from unnecessary decision of constitutional issues.'" Id. (quoting Roman Catholic Bishop, 724 F.3d at 89).

"The hardship prong is wholly prudential and concerns the harm to the parties seeking relief that would come to those parties from our withholding of a decision at this time." Id. (internal citations omitted). "Generally, a 'mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship.'" Sindicato, 699 F.3d at 9 (quoting Simmonds v. I.N.S., 326 F.3d 351, 360 (2d Cir. 2003)). "However, the Supreme Court has made clear that when a plaintiff alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" Id. (quoting Babbitt v. United Farm Workers Nat'l. Union, 442 U.S. 289, 298 (1979)). Most significant here, "when free speech is at issue, concerns over chilling effect call for a relaxation of ripeness requirements." Id. (quoting Sullivan v. City of Augusta, 511 F.3d 16, 31 (1st Cir. 2007)).

Project Veritas alleges that if not for Section 99, it would "investigate and report on the public controversy over 'sanctuary cities' in Massachusetts." Docket No. 48 ¶ 22. Specifically, "it would secretly investigate and record

6

government officials who are discharging their duties at or around the State House in Boston and other public spaces to learn about their motives and concerns about immigration policy and deportation." Docket No. 48 ¶ 22. James O'Keefe, President of Project Veritas, "verif[ied] under penalty of perjury under the laws of the United States of America that the factual statements contained in [Project Veritas'] First Amended Verified Complaint concerning [Project Veritas'] existing and proposed activities are true and correct." Docket No. 48 at 13. Project Veritas argues that it cannot provide any more specific details about whom it intends to record, where, when, and how frequently because it cannot know all the developments an investigation may involve.

At the hearing, Project Veritas admitted that it has not pursued investigation on "sanctuary cities" in other parts of the country. Project Veritas cites an article about Chicago Mayor Rahm Emanuel's suit against President Donald Trump to showcase the relevance of this topic -- a city in which surreptitious recording of police officers performing their duties in public places is protected, American Civil Liberties Union of Illinois v. Alvarez, 679 F.3d 583, 586 (7th Cir. 2012), -- yet Project Veritas has not launched an investigation in Chicago.

Defendant Conley moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that Project Veritas' sparse allegations do not provide a factual basis fit for review and should be dismissed as unripe. See Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995) (The issue presented must be "fit for review," an inquiry that typically involves "finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed."). Conley alleges that Project Veritas "has not pled the specific locations where it would make those recordings, how it would make them (except for surreptitiously), the content that it would capture, or whom it would record." Docket No. 73 at 6. He argues that without this specificity, Plaintiff's allegations do not provide the Court an opportunity to assess whether the proposed recordings would interfere with the public employees' ability to effectively perform her duties, a limitation this Court recognized in Martin. 2017 WL 1015000 at *8 ("The government also has a significant interest in restricting First Amendment activities that interfere with the performance of law enforcement activities or present legitimate safety concerns. Those significant interests may justify certain restrictions on audio and audiovisual recording of government officials' activities."); Alvarez, 679 F.3d at 607 ("It goes without saying

that the police may take all reasonable steps to maintain safety and control, secure crime scenes and accident sites, and protect the integrity and confidentiality of investigations."). Without these facts, Conley argues, the Court would only be able to deal in hypotheticals, which is "patently advisory." Babbitt, 442 U.S. at 290. Conley does not argue that Project Veritas' claim is unripe under the second component of the ripeness analysis, hardship.

Project Veritas relies on the relaxed ripeness requirements as applied to First Amendment challenges to argue their claim is ripe for review -- "when free speech is at issue, concerns over chilling effect call for a relaxation of ripeness requirements." Sindicato, 699 F.3d at 9 (quoting Sullivan, 511 F.3d at 31 ("[W]hen First Amendment claims are presented, reasonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim."(internal citations omitted))). Project Veritas argues that the First Circuit "has been abundantly clear: where a credible threat of enforcement exists, a speaker need not even 'describe a plan to break the law or wait for a prosecution under it. . . . that injury, the chilling effect, is not only likely but has already come to pass.'" Docket No. 75 at 4 (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003)).

9

The First Circuit has stated that "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996). See generally Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334 (2014).

Section 99 is not a moribund law. Although there are no statistics in this record about how often persons are arrested or charged for a Section 99 violation, the Supreme Judicial Court reaffirmed the vitality of the statute in Commonwealth v. Hyde. 750 N.E.2d 963, 964 (Mass. 2001) (finding that an individual may be prosecuted under Section 99 for secretly tape recording statements made by police officers during a routine traffic stop). Moreover, when asked at the August 11, 2017 hearing on the motion to dismiss, Conley's counsel did not disavow enforcement of Section 99. See Blum v. Holder, 744 F.3d 790, 799 (1st Cir. 2014) (finding no standing where "the Government . . . disavowed any intention to prosecute plaintiffs for their stated intended conduct").

However, Project Veritas' claim that it intends to investigate and report on "sanctuary cities" in Massachusetts and secretly record government officials in effort to learn

10

about their motives and concerns about immigration policy and deportation is too vague and conclusory to pass muster under the plausibility standard. "The doctrine of ripeness . . . asks whether an injury that has not yet happened is sufficiently likely to happen to warrant judicial review." Mangual, 317 F.3d at 60 (citing Gun Owners Action League, Inc. v. Swift, 284 F.3d 198, 205 (1st Cir. 2012)). In this case, the claimed injury is the chilling effect on Project Veritas' First Amendment protected speech. See id. In the cases where the Court found this type of injury, the plaintiff seeking pre-enforcement review previously engaged in the activity prohibited under the statute. For example, in Mangual, the plaintiff, a newspaper reporter, had previously been threatened with prosecution under a Puerto Rico criminal libel statute for articles he published about government corruption and "state[d] an intention to continue covering police corruption and writing articles similar to those which instigated [a previous] threat of prosecution." Mangual, 317 F.3d at 58. In Martin, both plaintiffs had previously recorded their interactions with police officers. 2017 WL 1015000 at *1. In Sullivan, the First Circuit determined plaintiffs' challenge to a parade permit ordinance, which required 30-day advance notice, was ripe even though it had made a timely application for a permit because one plaintiff alleged he had not held a short-notice march because of the notice

11

requirement. 511 F.3d at 30-32. In Sindicato, the First Circuit held: "A party need not marshal all its resources and march to the line of illegality to challenge a statute on First Amendment grounds." 699 F.3d at 9. However, the Court pointed out that plaintiff union had alleged it had "taken steps in preparation to carry out those acts" in violation of the campaign finance law and had spent significant funds promoting certain campaign proposals. Id.

The law requires a plausible showing of true intent to investigate that has been chilled. See Labor Relations, 844 F.3d at 326 ("The burden to prove ripeness is on the party seeking jurisdiction. The pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6) -- that is, the plaintiffs must state a claim to relief that is plausible on its face." (citation omitted)). "[A] 'claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Id. (quoting City of Fall River v. FERC, 507 F.3d 1, 6 (1st Cir. 2007)).

The Court concludes that even under the more relaxed ripeness standard afforded First Amendment protections, Project Veritas has not alleged sufficient immediacy, reality, or hardship to warrant judicial relief both as a constitutional or prudential matter. It alleges no plans, steps, expenditure of

12

funds, or past activities that plausibly suggest a present intent to launch a prohibited investigation. Project Veritas simply dashed off a possible investigation into sanctuary cities in Suffolk County to claim its First Amendment activities were chilled. The ripeness burden is not high but it is not non-existent even in the area of First Amendment protection.

## ORDER

Pursuant to Fed. R. Civ. P. 12(b)(1), the Motion to Dismiss (Docket No. 72) is **ALLOWED** without prejudice.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge