UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROJECT VERITAS ACTION FUND, | ) |
| Plaintiff, | ) Civil Case No. 16-10462-PBS |
| v. | ) |
| DANIEL F. CONLEY,<br>SUFFOLK COUNTY DISTRICT<br>ATTORNEY | ) Affidavit of Robert Joel Halderman in<br>) Support of Plaintiff's Motion for Summary<br>) Judgment |
| Defendant. | ) |

## AFFIDAVIT OF ROBERT JOEL HALDERMAN

I, Robert Joel Halderman, being duly sworn upon my oath do hereby state the following to be true and accurate:

1) I have served as the Executive Producer of Project Veritas Action Fund ("PVA") since 2014.

2) I submit this affidavit in support of PVA's motion for summary judgment. I am familiar with the claims raised by PVA. I am authorized to make this affidavit on behalf of PVA and I make these statements based on my personal knowledge or upon review of the information kept in the course of normal business operations at PVA. The facts set forth in this affidavit are true to my knowledge.

3) PVA is a journalism organization that almost exclusively relies on secret audio and video recording to report to the public about instances of corruption, fraud, waste, and abuse.

4) PVA has consistently exposed corruption, fraud, waste, and abuse since its inception in 2014. It has investigated or reported to the public about numerous matters of public concern, including the following exclusive reports:

   a. PVA discovered Australian Labor Party workers embedded in the Bernie Sanders 2016 presidential campaign committee and revealed how that arrangement violated federal election law. After an investigation by the Federal Election Commission, the Australian Labor Party and the Sanders campaign each agreed to pay a penalty of $14,500.

   b. PVA exposed the inner workings of political campaigns during the 2016 election. PVA sent a reporter into an organization called Democracy Partners and uncovered evidence of potential violations of federal election law. The head of Democracy Partners, Robert Creamer, resigned his role in the Hillary Clinton campaign as a result of this investigation.

5) PVA had plans to investigate at least four items of public concern in Massachusetts, but was unable to do so due to Massachusetts' ban against secret audio recording.

   a. PVA planned to secretly record landlords in Boston offering unsafe or dilapidated apartments to college students and report its findings to the public. Massachusetts' recording ban prohibited PVA from doing so.

   b. PVA planned to secretly record police, legislators, and members of the Massachusetts Office for Refugees and Immigrants and their positions on sanctuary

cities and then report its findings to the public. Massachusetts' recording ban prohibited PVA from doing so.

    c. On August 12, 2017, PVA sent undercover journalists to observe Antifa protests in Charlottesville, Virginia. One journalist submitted video included herein as **Attachment 1**, with a screenshot from this video included as **Attachment 2**. This was recorded with a hidden camera and video included video of police officers engaged in their duties. On August 13, 2017, PVA sent undercover journalists to observe Antifa protests in Atlanta, Georgia. One journalist submitted a report included herein as **Attachment 3**, as well as video included herein as **Attachment 4**. This video was recorded openly and included video of police officers engaged in their duties. Both the Charlottesville and Atlanta episodes were part of an investigation that continues at the time of this writing. PVA planned to secretly record members of the protest group Antifa and any public officials connected with them in Boston on August 19, 2017 to learn more about their protest management tactics and report upon that to the public. Massachusetts' recording ban prohibited PVA from doing so.

    d. PVA planned to secretly record university officials at Harvard University to learn more about its endowment and use of federal funds then report upon that to the public. Massachusetts' recording ban prohibited PVA from doing so.

6) PVA would like to secretly record audio and video in Massachusetts to capture items of newsworthiness. It would still like to secretly record landlords in Boston, public officials about sanctuary cities, future Antifa events, and officials at Harvard University.

7) PVA would also like to send undercover journalists out with secret recording devices to Boston to develop leads about corruption and waste in the government to be able to develop these stories and report about them to the public. PVA cannot predict how these early investigations would develop due to the spontaneous nature of undercover journalism.

8) In my role as Executive Producer, I take steps to ensure that undercover reporters comply with the legal requirements in each state we operate in. PVA ensures when it operates in a state with "two-party" consent laws, that PVA only records where there is no reasonable expectation of privacy. PVA cannot operate in Massachusetts because the state bans all secret recording it would use for newsgathering.

9) PVA performs its newsgathering almost exclusively with secret audio and video recording. PVA is focused on collecting news about corruption, fraud, waste, and abuse. In my experience, reporters are best able to report on those topics only through the use of secret recording. In addition, it is important for PVA to use secret recording early in investigations to build reliable news stories and timelines.

10) I instruct undercover journalists to obey requests issued by government officials or others. Should police ask PVA journalists to stand away from an investigation, they are instructed to comply. Should a landowner demand that a PVA journalist leave a property, they are instructed to do so.

11) PVA maintains ongoing desires to operate in Massachusetts to secretly record and will do so once it is legally permissible.

Pursuant to 28 U.S.C. § 1746, I, Robert Joel Halderman, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 10, 2018.

By: _____
Robert Joel Halderman