RECEIVED
FEDERAL ELECTION
COMMISSION

**Before the Federal Election Commission**

2016 NOV 14 AM 10:30

American Democracy Legal Fund    MUR 6982
455 Massachusetts Avenue NW
Washington, DC 20001              OFFICE OF GENERAL
                                  COUNSEL

v.

Jane Doe
Project Veritas
1214 W. Bostn Post Road #148
Mamaroneck, NY 10543

James O'Keefe, Founder and President
Project Veritas
1214 W. Boston Post Road #148

Project Veritas Action Fund
1214 W. Boston Post Road #148
Mamaroneck, NY 10543

1

RECEIVED
FEDERAL ELECTION
COMMISSION

Jeff S. Jordan
Complaints Examination & Legal Administration
Office of the General Counsel
Federal Election Commission
999 E Street NW
Washington, DC 20463

2016 NOV 14 AM 10: 30

OFFICE OF GENERAL
COUNSEL

Re:   MUR 6982, Project Veritas Action Fund

Dear Mr. Jordan:

On behalf of my client, Project Veritas Action Fund ("PVA"), this responds to your letter received October 26, 2016, notifying it of a complaint alleging violations of the Federal Election Campaign Act ("FECA") from the American Democracy Legal Fund (the "Fund"). The complaint originally errantly named Project Veritas as the party in controversy. It now lists PVA and "Jane Doe," one of its reporters, as the proper parties in controversy. Jane Doe is Laura Loomer, a PVA reporter who now works in its communications department. PVA has included the affidavits of Laura Loomer and James E. O'Keefe III, who is the founder of PVA.

The complaint stems from a piece of undercover journalism completed at a Hillary for America ("HFA") event on June 13, 2015 on Roosevelt Island, New York. This video can be located online at: http://www.projectveritasaction.com/video/high-level-clinton-campaign-staff-caught-video-knowingly-breaking-law. It should be noted that PVA sent one reporter to investigate the event with no predetermined goals. It shares no relationship with, and has no knowledge about, the individuals captured in the video other than its reporter, Laura Loomer.

The Fund sets forth three unsupportable claims in its complaint. First, the complainant argues that a PVA reporter impermissibly solicited a contribution from a foreign national. Its sole support for this claim is a single comment from the PVA reporter comment to HFA staff that the unidentified female "traveled all the way from Canada to support Hillary, you could give her, she's paying cash." *Id.* at 2:14-2:19.

Unfortunately, the complainant selectively interpreted the discussion in the video to imply an improper solicitation occurred. In the video, it is clear that the PVA reporter, HFA staff, and the unidentified female are having a discussion about whether a Canadian could make a purchase or contribution. The PVA reporter suggests it perhaps could occur, while listening to the input of the HFA staff members. *Id.* at 1:48-2:28. Upon this scintilla of evidence, a case is not made. Further still, there is only one party aptly equipped to determine the citizenship of the unidentified female in the video—HFA, who bears the legal duty for determining the legality of contributions it solicits and accepts. 11 CFR 104.7. Through an audit or field investigation of HFA, the FEC may be able to determine the identity of the mysterious woman. This speculative claim based on several people talking about the law simply does not supporting finding reason to believe a violation of the FECA occurred.

Second, complainant submits that the PVA reporter substantially assisted a foreign national in making a contribution. Under Commission regulations, this requires "knowingly provid[ing]

2

substantial assistance in the solicitation, making, acceptance, or receipt" of a foreign national contribution. 11 CFR 110.20(h). Contrary to the Fund's assertions, the actual citizenship of the unidentified female in the video is unknown. PVA has no knowledge of her name, address, or other information that would help locate her. *See* O'Keefe Affidavit. Further, as is made clear in the conversation in the video, both the unidentified female and the PVA reporter illustrate they do not understand the law but would really like to purchase hats or t-shirts celebrating the campaign of Hillary Clinton. It is finally suggested by the unidentified female that the PVA reporter make a donation so she may obtain Hillary Clinton items. This is met with approval by two HFA employees, one of which is a compliance manager with knowledge and expertise in the law, and who confirms this is a lawful transaction. On this basis, the purchasing of low-dollar value hats or t-shirts based on a misunderstanding of the law cannot constitute a violation that was made knowingly. No reason to believe a violation of the FECA should be premised upon these facts.

In its last hurrah, complainant argues that PVA violated the law by making a contribution in the name of another—a conduit contribution. The Fund suggests that the PVA reporter "shielded" the unidentified female's identity for purposes of disclosure under the law. No such obfuscation occurred because disclosure is not triggered in this instance. Under FEC regulations, a political committee must report the identification of a contributor who gives in excess of $200. 11 CFR 104.7. In such instances, the name, mailing address, occupation and name of employer must be collected. But for amounts under $200, like here, no such reporting is required. Thus, the disclosure regime maintained by the FEC is not disturbed, disclosure is not evaded, and no action should be taken. As an act of goodwill, PVA sent a letter to HFA notifying it of the contribution in question on September 1, 2015. This allowed HFA the ability to refund or disgorge the contribution or to examine whether it had a legal duty to do so. This letter is included as EXHIBIT A to this complaint.

Further points supporting dismissal in this instance are the facts themselves. This matter involves a contribution in controversy of $45. Laura Loomer sought to purchase a Hillary Clinton hat and rainbow buttons for $30. The unidentified female sought to purchase a Hillary Clinton t-shirt for $45. *See* Loomer Affidavit. This suggests that dismissal or a low dollar penalty would be appropriate, such as a penalty equal to the amount of the contribution. In general, the Commission has agreed to such dismissals in a variety of matters to preserve FEC resources allowing it to focus on more serious violations of the law. *See generally* Matter Under Review ("MUR") 6820 (Carter, et al.) ($1,000 prohibited funds transfer deemed *de minimus* amount warranting prosecutorial discretion and dismissal); MUR 6078 (Obama for America) ($6,277 in potential foreign national contributions deemed *de minimus* warranting finding no reason to believe a violation of the FECA occurred); MUR 5948 (Critical Health Systems of North Carolina, P.C.) ($3,400 penalty assigned for contribution conduit scheme); (MUR 5950) (Hillary Clinton for President) (Factual and Legal Analysis dismissing foreign national contribution violation to preserve FEC resources where prohibited contributions were refunded before the complaint was filed).

Because the amount in controversy is $45, because respondents took good faith efforts to notify HFA of its opportunity to refund or expunge the contribution, and because the legal foundation for the claims against PVA are without basis, the Commission should find no reason to believe a violation of the FECA occurred and dismiss this matter accordingly.

3

Sincerely,

Benjamin Barr
Counsel
Project Veritas Action Fund

Date:   November 9, 2016

**EXHIBIT A**



# Veritas
## ACTION FUND

September 1, 2015

Jose H. Villarreal, Treasurer
Hillary for America
PO Box 5256
New York, New York 10116-2001

Dear Treasurer Villarreal:

Project Veritas Action Fund ("PVA") is writing to inform you that on June 13, 2015 your committee accepted a cash contribution of $35 from a foreign national. While conducting an undercover investigation, a PVA journalist detected a Canadian foreign national providing your committee with this contribution, which is prohibited under the Federal Election Campaign Act ("FECA"). We are writing to request that the Hillary for America committee set aside or refund the contribution in question. See 11 C.F.R. § 103.3(b).

On June 13, 2015, an undercover PVA journalist was present at the Roosevelt Island event. As the journalist purchased Hillary campaign items, a self-identifying Canadian citizen attempted to make a contribution to the Hillary for America committee. The Hillary for America Committee Director of Marketing, Molly Barker, informed this Canadian that she could not contribute, but could make her contribution through an American citizen—specifically, the PVA journalist. The PVA journalist accepted the Canadian citizen's $35, then provided a cash contribution totaling $75. This $75 contribution was made in the name Laura Baker, address 7120 North Camden Street, Tucson, AZ 85704. Details of this interaction can be found online at www.projectveritasaction.com.

Under the FECA, the Hillary for America committee is prohibited from accepting foreign national contributions. See 52 U.S.C. 30121. Under 11 C.F.R. § 103.3(b), the Hillary for America Committee may elect to re-designate the contribution as prohibited and set it aside or refund it to the affected parties. We write to inform the committee of this prohibited contribution.

Either contribution—the PVA journalist's $40, the Canadian's $35—or the total of $75 were not required to be disclosed under the FECA. This letter also serves to inform the committee of its duty to not otherwise report a prohibited contribution to the Federal Election Commission ("FEC").

Sincerely,

Russell Verney
Executive Director
Project Veritas Action Fund

cc: Robby Mook, Hillary for America Campaign Manager

1214 W. Boston Post Rd. No. 156, Mamaroneck, N.Y. 10543
(914) 908-2321

AFFIDAVIT OF JAMES E. O'KEEFE III
FEDERAL ELECTION COMMISSION MURS 6982

1. I, James E. O'Keefe III, am the founder of Project Veritas Action Fund ("PVA").

2. PVA operates as a non-profit organization under Section 501(c)(4) of the Internal Revenue Code. Its headquarters are in Mamaroneck, New York and it is incorporated in Virginia.

3. PVA's mission is to investigate and expose corruption, dishonesty, self-dealing, waste, fraud, and other misconduct.

4. Unlike other news organizations, PVA conducts its research and news gathering almost exclusively undercover. That is, PVA employs the use of surreptitious recording and secretive newsgathering techniques to expose corruption and fraud. This has led to PVA breaking national stories of public interest during this past electoral cycle left otherwise undetected by traditional media outlets.

5. PVA sent an employee to investigate and observe a Hillary Clinton campaign rally held at Roosevelt Island in New York on June 13, 2015. This video is located online at: http://www.projectveritasaction.com/video/high-level-clinton-campaign-staff-caught-video-knowingly-breaking-law.

6. PVA had no predetermined goals with respect to its investigation of the Hillary Clinton campaign event. It deployed one reporter to determine whether any stories of public interest might be found or developed.

7. As is demonstrated in the PVA video, during the recorded event, the PVA reporter spontaneously happened upon a discussion between an unidentified individual claiming Canadian citizenship and Molly Barker, Director of Marketing for Hillary for America ("HFA") and Erin Tibe, Compliance Manager for HFA.

8. PVA is unaware of the identity of the unidentified female and does not know her citizenship status. PVA has no personal, business, or legal agreements or arrangements with the unidentified female.

9. After publishing its report of this incident, PVA sent a good faith letter to HFA notifying it that it may have received an improper campaign contribution under the Federal Election Campaign Act. The letter gave notice to HFA to set aside or refund the contribution in question so as to aid in its compliance with the law.

10. PVA had no foreknowledge that a self-identifying Canadian citizen would be at the HFA event on June 13, 2015. PVA has always respected and abided by federal election laws. PVA provided no instructions to its reporter to make any contribution to any campaign. And PVA further took steps to notify HFA of the possibly improper contribution, giving it the opportunity to expunge or refund it.

I do solemnly declare and affirm under the penalties of perjury and upon personal knowledge that the facts set forth herein are true and correct.

By: _____  Date: 11-4-2016
James E. O'Keefe III

Sworn to and subscribed to before me this 4th day of November, 2016.

_____
Notary Public

Jennifer Zern
Notary Public, State of New York
No. 01ZE6180257
Qualified in Westchester County.
Commission Expires ~~January 7,~~ February 21, 2020

AFFIDAVIT OF LAURA LOOMER
FEDERAL ELECTION COMMISSION
MATTER UNDER REVIEW 6982

1. I, Laura Loomer, am an employee of Project Veritas. I previously served as an undercover reporter in 2015 and presently work in Project Veritas' communications department.

2. On June 13, 2015 I attended Hillary Clinton's/Hillary for America ("HFA") campaign announcement at Roosevelt Island in New York City. I did this as part of a Project Veritas Action Fund project to cover the event and discover newsworthy events.

3. Before the event began I walked over to the merchandise table to purchase a hat and two rainbow Hillary buttons for $30. While I was in line I overheard an unidentified, self-described Canadian woman say that she wanted to buy a t-shirt. When she was asked to put in her address, Molly Barker, the director of campaign merchandising, told the woman that she could not buy the shirt unless she was an American citizen.

4. The unidentified woman became upset and argued with the staff. At this point I interjected into the conversation and I took the unidentified woman's side, saying that she should be allowed to purchase the t-shirt. The unidentified woman asked if she could give the money to me so that I could purchase the t-shirt for her. Molly Barker replied that I could make a donation.

5. To ensure compliance with the law, I specifically asked, "So Canadians can't buy them, but Americans can buy it for them?" To wit, Barker replied, "Not technically, you would just be making the donation."

6. I paid a total of $75 for my hat and button and the woman's t-shirt. The woman never gave me her name so I had no way of knowing who she was besides the fact that she said she claimed to be a Canadian.

I do solemnly declare and affirm under the penalties of perjury and upon personal knowledge that the facts set forth herein are true and correct.

By: _Laura E. Loomer_    Date: _11/4/16_
Laura Loomer

Sworn to and subscribed to before me this 4th day of November, 2016.

_____
Notary Public

Jennifer Zern
Notary Public, State of New York
No. 01ZE6180257
Qualified in Westchester County
Commission Expires January 7, February 21 2020